DECISION AND JUDGMENT
{¶ 1} This case is before the court on appeal from the judgment of the Lucas County Court of Common Pleas which, on September 14, 2007, found appellant, Otis K. Brown, in violation of the Civil Stalking Protection Order ("CSPO") issued on December 7, 2004, and ordered appellant to serve 30 days in the Lucas County Correctional Center, suspended pending no further violations. Appellant timely appealed *Page 2 
the decision of the trial court on October 12, 2007. Appellee did not file a brief on appeal.
 {¶ 2} On December 7, 2004, [1] the trial court entered a CSPO in favor of appellee, Melody Chiles, and her son, William E. Smith. In pertinent part, appellant was ordered to "stay away" from appellee and her son, the protected persons, and was ordered to "not be present within 500 feet * * * of protected persons, wherever protected persons may be found, or any place [appellant] knows or should know the protected persons are likely to be * * *." If appellant accidentally comes in contact with protected persons in any public or private place, including encounters on public and private roads, highways, and thoroughfares, appellant was ordered to "depart immediately." This CSPO was ordered to remain in full force and effect until December 7, 2009.
 {¶ 3} On March 29, 2007, appellee filed a motion to show cause for appellant's alleged violation of the CSPO on March 28, 2007 at 2:10 p.m. The motion to show cause came for hearing on September 10, 2007, before the Honorable Linda J. Jennings, presiding on behalf of the Honorable Ruth Ann Franks. Appellant was represented by counsel. Appellee, however, proceeded pro se. Following the hearing, the trial court made the following findings:
 {¶ 4} "The court has listened very carefully to the testimony of all of the witnesses today. In particular, William Smith, Jerome Brown, and Otis Brown. I've also listened very carefully to the statements made by the Petitioner, Ms. Chiles. I've weighed *Page 3 
the evidence and the credibility of the witnesses also. I'm going to find that Mr. Brown has violated the Civil Stalking Protection Order and find that he is in contempt. I'm going to order that Mr. Brown serve a term of 30 days at the Corrections Center of Northwest Ohio. That sentence will be suspended, pending any further findings of contempt. That will be the order of the court."
 {¶ 5} On appeal, appellant raises the following assignments of error:
 {¶ 6} "1. The judgment finding appellant to be in contempt of court is not supported by sufficient evidence.
 {¶ 7} "2. The judgment finding appellant to be in contempt of court is against the manifest weight of the evidence."
 {¶ 8} For clarity, appellant's assignments of error will be considered together. Appellant asserts that the trial court's decision finding appellant in civil contempt was not supported by clear and convincing evidence and was against the manifest weight of the evidence. In particular, appellant argues that Smith's testimony was confusing regarding the sequence of events and his description of the geographical area near his home, was contradictory because Smith testified he was afraid of appellant, but that appellant had never "done anything to him", and was clearly inaccurate regarding Smith's testimony that he was on vacation from school when the events took place. Appellant also questioned appellee's and Smith's credibility because they brought forth no corroborating witnesses, such as Smith's friend, who was allegedly present during the events in question, or the police officer(s) who was/were called to the scene. Appellant *Page 4 
additionally argues that he established that he was in Oregon, Ohio, and/or at his home on Lucas Street, and in the company of Jerome Brown, at the time the alleged incident occurred, and was not in the vicinity of appellee's home.
 {¶ 9} We have thoroughly reviewed the record in this case and find that the record is not deficient, as appellant suggests. The relevant facts are as follows. On March 29, 2007, appellee filed the following sworn statement in her motion to show cause:
 {¶ 10} "Now comes the petitioner, and states that the following facts herein set forth are true: That the incident or contact causing the filing of this petition occurred on March 28, at 2:10 p.m.
 {¶ 11} "Described what happened: Otis and I went to court on his TPO violation, assault, and intimidation of a crime victim. After coming home, my son and his friend was headed to my house and Otis passed my house, seen my son and did a U-turn to intimidate him around the island 2x's and skidded, then my son and his friend ran. He called 911 but they couldn't understand what was going on. So he came beating on the back door telling me what happen, then I call 911. The police came and said they couldn't do anything about it because me and my son didn't have a protection order. I filed a report but I'd rather see Judge Ruth Ann Franks.
 {¶ 12} "Petitioner states that the information contained herein is complete and accurate to the best of his/her information, knowledge or belief under penalty of law." *Page 5 
 {¶ 13} Appellant's counsel called William Smith on cross-examination. Smith testified that he was 13 years old and was in the eighth grade. Smith was uncertain of the date or exact time of the incident in question, but believed it occurred "in the middle of the day." Smith was also questioned why he was not in school; however, he had no reasonable explanation.
 {¶ 14} Regarding the alleged actions taken by appellant, Smith's testimony was initially jumbled and confusing. However, upon our thorough review of the transcript, we find that, after additional questioning by appellant's counsel, the trial court, and appellee, Smith's testimony became clarified. Smith testified that he lived on Upton Avenue and was walking home. Smith was on Upton Avenue, approaching Woodward Avenue, when he saw appellant's blue van approaching from the opposite direction. Smith testified that appellant continued past him on Upton Avenue. However, as Smith was crossing Woodward Avenue, he saw that appellant had stopped on Woodward Avenue and was staring at Smith. Specifically, Smith testified that appellant had stopped on Woodward Avenue, by an island in the intersection of Woodruff Avenue and Shenandoah Road, approximately one-half block from Upton Avenue, but less than 150 yards away from Smith. In order to have arrived at the island, Smith testified that, after passing him, appellant would have had to turn on the next street and circled the block. Once Smith saw appellant staring at him from Woodruff Avenue, Smith called 911 and ran home. Smith testified that he was walking with a friend at the time; however, Smith's friend did not testify. *Page 6 
 {¶ 15} Smith further testified that although appellant had never hit him or threatened him, Smith was nevertheless afraid of appellant and was intimidated by appellant circling the block to come back around and look at Smith. According to Smith, appellant never exited the vehicle and never approached, called to, gestured to, or otherwise communicated with Smith. Smith testified that no one else was in the van with appellant.
 {¶ 16} Appellee also testified regarding the incidents on March 28, 2007. Appellee testified that Smith came home, banging on the back door. Appellee described the events as follows:
 {¶ 17} "[Smith] had called 911 on his phone and he was shaking and trembling and he was saying, Otis out there, Otis out there. He went around the island, he went around the island, that's — he was excited, he went around the island, he came back — * * * He went down Upton, he said he passed — he was walking home and then he turned down the one side street, whichever one that was, Woodruff, whatever. The one after the island. And he came back up the street where the island was at, he said he went around the island, came back, he stopped, and then my son picked up his cell phone, called 911, ran home, beat on the door and told me and so I called 911 immediately. And they said, ma'am — it was the same person, police person, answered the phone, and it was a coincidence. I was like, thank God, they was like, somebody just called earlier, was all franticy [sic] and panicky, but we didn't understand a word he said. So I explained to them what happened." *Page 7 
 {¶ 18} The court asked appellee what her son had stated and appellee replied:
 {¶ 19} "He's like, Otis was just following — he just seen Otis and he went around the island and he said he skidded — he said, I burnt rubber, that's what he told me. And he was scared and he was shaking, and you said I can't say nothing about his friend, but he was shaking."
 {¶ 20} Jerome Brown, who lived and worked with appellant, testified that appellant had taken him to St. Charles' Hospital in Oregon, Ohio, on March 28, 2007, for a drug screening that was required by his employer. Appellant entered into evidence a copy of paperwork which indicated that Brown's specimen sample was collected at 12:16 on March 28, 2007. Brown testified that following the drug test, he and appellant drove around the Oregon area to locate work clothing. They then returned to their home on Lucas Street, Toledo, Ohio, where they stayed until after 6:00 p.m. Brown testified that they did not drive past appellee's home or see Smith on that day.
 {¶ 21} Appellant similarly testified that, following court that morning, he went to a house he owned on Detroit Avenue and then went home to Lucas Street. After staying there a period of time, he drove Brown to St. Charles' Hospital. After approximately 45 minutes at the hospital, they left and went shopping for work coveralls. After shopping for an hour or so, appellant testified that he and Brown returned to Lucas Street, where he remained until after 6:00 p.m. that evening. Appellant testified that he had seen Smith at various times near his Detroit Avenue property, which is near Smith's school, but never *Page 8 
drove near appellee's house on Upton because of the CSPO, and had not seen Smith that day.
 {¶ 22} Appellant was ordered to "stay away" from Smith pursuant to the trial court's December 7, 2004 judgment pursuant to R.C. 2903.214. A person who violates a protection order issued under R.C. 2903.214 is subject to punishment for contempt of court. R.C. 2903.214(K)(1)(b). The standard of proof required for a finding of contempt depends on whether the contempt is civil or criminal.
 {¶ 23} The characterization of a finding of contempt as civil or criminal depends "not on the basis of punishment, but rather, by the character and purpose of the punishment." Brown v. Executive 200,Inc. (1980), 64 Ohio St.2d 250, 253. In civil contempt, "[p]unishment is remedial or coercive and for the benefit of the complainant," and "[p]rison sentences are conditional," since the contemnor will be free if he agrees to do as ordered. Id. Whereas, criminal contempt is "usually characterized by an unconditional prison sentence," which "operates not as a remedy coercive in its nature but as punishment for the completed act of disobedience, and to vindicate the authority of the law and the court." Id. at 254.
 {¶ 24} In this case, appellant's 30 days incarceration was conditioned upon him abiding by the CSPO and having no further violations. Because the punishment imposed was coercive and remedial, appellant was found guilty of civil contempt. See id. at 253. Civil contempt requires a finding of guilt by clear and convincing evidence. Id. "Clear and convincing evidence is that measure or degree of proof which is more than a mere *Page 9 
`preponderance of the evidence,' but not to the extent of such certainty as is required `beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v.Ledford (1954), 161 Ohio St. 469, paragraph three of syllabus.
 {¶ 25} The standard of review of a trial court's finding of contempt is abuse of discretion. State ex rel. Ventrone v. Birkel (1981),65 Ohio St.2d 10, 11. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
 {¶ 26} We find that appellant's violation of the CSPO was proven by clear and convincing evidence. Smith testified that appellant had circled the block to observe Smith as he walked down Upton Avenue. Although Smith, a 13 year old, was not entirely articulate regarding the geographical area of the incident, the facts as alleged were eventually clarified and testified to on the record. Additionally, consistent with Smith's testimony, appellee testified that Smith, shaking and trembling, ran into their home exclaiming that appellant had rounded the block to stare at Smith. We recognize that appellant and Brown testified that they were in the Oregon, Ohio, area when the incident occurred; however, we note that the trial court is in the best position to view the witnesses and judge their credibility, and, clearly, the trial court did not believe appellant's version of events. We therefore find that there was ample testimony provided *Page 10 
to produce, in the mind of the trial court, a firm belief or conviction that appellant violated the terms of the CSPO.
 {¶ 27} Accordingly, we find that the trial court did not abuse its discretion in finding appellant guilty of civil contempt. As such, we find that their was sufficient evidence to prove appellant's guilt and that the decision of the trial court was not against the manifest weight of the evidence. Appellant's first and second assignments of error are therefore found not well-taken.
 {¶ 28} On consideration whereof, the court finds substantial justice has been done the party complaining and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4.
Peter M. Handwork, J., Mark L. Pietrykowski, P.J. and William J. Skow, J., concur.
[1] The order of the court was journalized on December 8, 2004. *Page 1